# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

KELLY E. MATTHEWS,                    :
      Plaintiff                    :
                             :     Case No: 3:05cv226(PCD)
vs.                                   :
                             :
THE CONNECTICUT LIGHT AND             :
POWER COMPANY,                        :
      Defendant.                   :

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Kelly Matthews brings this employment discrimination action, alleging that she was terminated on the basis of pregnancy and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("PDA"). Defendant Connecticut Light and Power ("CL&P") moves for summary judgment pursuant to Fed. R. Civ. P. 56.  For the reasons explained below, Defendant's Motion for Summary Judgment [Doc. No. 26] is **denied**.

## I.    BACKGROUND

In December of 2003, Plaintiff accepted a position as a Customer Service Representative with CL&P. (Def.'s Local Rule 56(a)(1) Statement ¶ 18.)[1]  Plaintiff understood that she was to be a probationary employee for six months. (Id. ¶ 34.) The parties contemplated that Plaintiff would work at Defendant's Customer Service Center in Wethersfield, Connecticut from Monday through Friday from 3:00 p.m. to 11:00 p.m. (Id. ¶ 16.) The Customer Service Center operates twenty-four hours every day and receives calls from customers regarding their services and accounts. (Id. ¶¶ 2-3.)

---

[1]      With regard to facts taken from Def.'s Local Rule 56(a)(1) Statement, the facts are admitted by Plaintiff unless otherwise noted.

Prior to her first day of work, Plaintiff advised Lynn Loveland, the human resources consultant who hired her, that she was pregnant and due on June 14, 2004. (Id. ¶ 17.) Plaintiff asked Ms. Loveland if she could change her regular hours to 9:00 a.m. to 5:30 p.m. (Id. ¶ 19.) The shift change was approved and Plaintiff began work with this revised schedule on January 5, 2004. (Id. ¶ 20.)

On her first day of work, Plaintiff and another new employee met with Lorraine Gustafson, a Customer Service Center Supervisor, for orientation. (Id. ¶ 21.) Ms. Gustafson was to be Plaintiff's supervisor once Plaintiff completed her training and began working in the call center. (Id. ¶ 39.) During the meeting, Ms. Gustafson outlined CL&P's expectations about attendance, schedule adherence, and other Customer Service Center protocols. (Id. ¶ 22.) Ms. Gustafson emphasized that Defendant expected its employees to be dependable and reliable. (Id.) During the meeting the other new hire asked Plaintiff when her baby was due. (Id. ¶ 23.) Ms. Gustafson had not been informed that Plaintiff was pregnant and she congratulated Plaintiff. (Gustafson Mem., February 26, 2004, Ex. 2 to Pl.'s Mem. Opp. Mot. Summ. J.; Def.'s Local Rule 56(a)(1) Statement ¶ 24.) At this time, Plaintiff also informed Ms. Gustafson that she had a fifteen-month old son. (Gustafson Mem., Feb. 26, 2004.) Ms. Gustafson assured Plaintiff that other customer service representatives had undergone training while pregnant and that CL&P would attempt to reasonably accommodate her childcare needs, however, she stressed that the Customer Service Center was a round-the-clock operation which required its employees to work their scheduled shifts. (Def.'s Local Rule 56(a)(1) Statement ¶ 25.)  Plaintiff asserts that after her pregnancy was disclosed, Ms. Gustafson's tone of voice changed and she seemed unhappy with Plaintiff. (Pl.'s Dep. 50:10-24, July 7, 2005.)

2

Immediately following the orientation, Plaintiff spoke with Ms. Gustafson and requested that her shift be changed again to accommodate her childcare needs. (Def.'s Local Rule 56(a)(1) Statement ¶ ¶ 26-27.) Plaintiff requested to work from 8:00 a.m. to 4:30 p.m. on Mondays, Tuesdays, and Wednesdays, and from 9:00 a.m. to 5:30 p.m. on Thursdays and Fridays until November 2004. (Id. ¶ 27.) During this conversation, Ms. Gustafson questioned Plaintiff about her childcare arrangements, specifically about the availability of her son's father or other family members to assist with childcare. (Pl.'s Dep. 51:22-52:15.) Ms. Gustafson told Plaintiff that "this job may not be a match for you" two or three times. (Pl.'s Dep. 52:17-19.). Plaintiff felt that she was being "badgered."(Pl.'s Dep. 53:3-4.)

CL&P requires its new Customer Service Representatives to complete a training program, however, while Plaintiff was waiting for the next training class to fill up, she was instructed to shadow other employees in the Customer Billing Services Department. (Pl.'s Mem. Opp. Mot. Summ. J. 3.)  John Flament was assigned to be her supervisor during this period of time. (Def.'s Local Rule 56(a)(1) Statement ¶ 39.)

On her second day of work, Ms. Gustafson met with Plaintiff and reprimanded her for wearing sneakers. (Pl.'s Mem. Opp. Mot. Summ. J. 3.) Plaintiff testified that she had not been aware that sneakers were against dress code and told Ms. Gustafson that she would purchase some appropriate shoes with her first paycheck because she did not have enough money to do so at that time. (Pl.'s Dep. 64:2-21.) Plaintiff alleges that Ms. Gustafson asked her a number of personal questions about her finances and her ability to take care of her son, and believes that she was being singled out. (Pl.'s Mem. Opp. Mot. Summ. J. 3.)

On Plaintiff's third day of work, Ms. Gustafson wrote a memo to herself regarding Plaintiff. (Gustafson Mem., January 28, 2004, Ex. 7 to Pl.'s Mem. Opp. Mot. Summ. J.)  In the

memo, Ms. Gustafson  noted "issues" that concerned her, including Plaintiff's pregnancy, her young son, her requests for schedule changes and days off for her son's doctor's appointments, her lack of back-up child care, and her holiday preferences. (Id.) She also wrote that she had "concerns for leave for pregnancy and training retained." (Id.)  Ms. Gustafson also noted a conversation she had with Ms. Loveland in which Ms. Loveland instructed her "to tell her if Kelly chooses different shift but to speak to Diane Jones[2] if other issues arise with us letting her go."  (Id.)[3]

During her first month of employment, Plaintiff missed four days of work—three days because her son was ill and she stayed home to care for him, and one day because a snowstorm forced her daycare to close and she had no back-up child care.  Plaintiff was tardy once because she overslept and she left early four times—twice to bring her son to doctor's appointments, and twice to attend doctor's appointments herself. (Def.'s Local Rule 56(a)(1) Statement ¶ 31.)

Mr. Flament commented on Plaintiff's performance in a January 28 memo to Ms. Gustafson and Call Center supervisor Bibi Dorman. (Flament Mem., Ex. 3 to Pl.'s Mem. Opp. Mot. Summ. J.) Mr. Flament noted that he had discussed with Plaintiff her repeated absences, stressed the importance of punctuality and attendance, and urged her to have a conversation with Ms. Gustafson to get a "clear understanding of where she stood," as he felt that Plaintiff "did not understand the gravity of her situation." (Id.)  Mr. Flament also wrote, however, that:

> Kelly has exhibited many good traits as a worker when she has been here, and has been going through issues with a sick child, as well as being sick herself. My staff who have worked with her consider her a quick learner, and have enjoyed

---

[2]  Diane Jones is an employee in Defendant's Human Resources Department. (Pl.'s Mem. Opp. Mot. Summ. J. 6.)

[3]  Plaintiff alleges that Ms. Gustafson was involved in the ultimate decision to terminate her employment. (Pl.'s Mem. Opp. Mot. Summ. J. 6.)

working with her. I've not experienced any problems with the bills she's been estimating, and she has been conscientious about staying focused on her work.

(Id.)

Plaintiff was asked to meet with Ms. Gustafson on January 29, the a day after Plaintiff was absent because of the snowstorm that caused her son's daycare to close. (Pl.'s Mem. Supp. Mot. Summ. J. 4.) Ms. Gustafson told Plaintiff that she needed to show up for work regardless of the weather and she needed to find a back-up child care plan. (Id.) Plaintiff assured Ms. Gustafson that the current situation was only temporary due to her son's illness and that, in the future, her son's father would be responsible for taking care of the child when the daycare was closed. (Id.)

When Plaintiff was absent, she followed company procedure by contacting Mr. Flament as soon as possible to notify him that she was going to be absent. (Pl.'s Mem. Opp. Mot. Summ. J. 5.) Her absences were approved each time she was absent. (Id. at 4-5.) Plaintiff came in early and worked late to try and make up the time she had missed. (Id. at 6.) She arranged with Mr. Flament to make up any time missed. (Id.)

Plaintiff was terminated from her position on February 5, 2004, with Defendant citing "excessive absenteeism" as the reason for the termination. (Def.'s Local Rule 56(a)(1) Statement ¶ 35.) Northeast Utilities' employee handbook has a section entitled "Job Performance Counseling and Discipline," which states that "two of the corrective action tools available to supervisors are job performance counseling and stepwise discipline." (Employee Handbook at 19, Ex. 9 to Pl.'s Mem. Opp. Mot. Summ. J.) Stepwise discipline is described as using "four steps of increasing severity (verbal, written, suspension and termination) depending on the

severity of the incident." (Id.) Plaintiff was never given a written warning about her attendance issues, nor was she suspended prior to her termination. (Pl.'s Mem. Supp. Mot. Summ. J. 5.)

Plaintiff received a "right to sue" letter from the Equal Employment Opportunity Commission on or about December 8, 2004, and subsequently filed a complaint alleging that she was terminated as a result of her pregnancy and her status as a mother in violation of Title VII and the PDA. (Compl. ¶ 6.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 69, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). A material fact is one which "might affect the outcome of the suit under the governing law" and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v.Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

The moving party bears the burden of establishing that summary judgment is appropriate, Anderson, 477 U.S. at 225, however, when moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant can satisfy its burden of establishing that there is no genuine of material fact in dispute by pointing to an absence of evidence to

support an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.") The non-moving party, in order to defeat summary judgment, must then come forward with "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. In making this determination, the Court draws "all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of N.Y., 72 F.3d 1051, 1060 (2d Cir. 1995) (citations omitted). However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading." Fed. R. Civ. P. 56(e).

Determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d

54, 59 (2d Cir. 1997) (internal citations omitted); see also Sologub v. City of New York, 202 F.3d

175, 178 (2d Cir. 2000) ("When reasonable persons applying the proper legal standards could

differ in their responses to the questions raised on the basis of the evidence presented, the

question is best left to the jury.").

## III.    DISCUSSION

Title VII prohibits discrimination on the basis of race, color, religion, sex, or national

origin in federal and private employment. See 42 U.S.C. § 2000e, et seq. The PDA amended Title

VII by prohibiting discrimination on the basis of pregnancy, and provides that "women affected

by pregnancy, childbirth, or related medical conditions shall be treated the same for all

employment related purposes . . . as other persons not so affected but similar in their ability or

inability to work . . . ." 42 U.S.C. § 2000e(k). The Second Circuit has further established that

"stereotyping about the qualities of mothers is a form of gender discrimination." Back v. Hastings

on Hudson Union Free Sch. Dist., 365 F.3d 105, 113 (2d Cir. 2004).

The intent of Title VII is to ensure equal employment opportunities and to eliminate

discriminatory practices on the basis of impermissible classifications. See McDonnell Douglas

Corp. v. Green, 411 U.S. 792, 800-01, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  Title VII is not,

however, intended:

> to guarantee a job to every person regardless of qualifications. In short, [Title VII]
> does not command that any person be hired simply because he was formerly the
> subject of discrimination, or because he is a member of a minority group.
> Discriminatory preference for any group, minority or majority, is precisely and
> only what Congress has proscribed. What is required by Congress is the removal
> of artificial, arbitrary, and unnecessary barriers to employment when the barriers
> operate invidiously to discriminate on the basis of racial or other impermissible
> classification.

Id. (quoting Griggs v. Duke Power Co., 401 U.S. 424, 430-31, 91 S. Ct. 849, 28 L. Ed. 2d 158

(1971).)

In McDonnell Douglas, the Supreme Court set forth the allocation of burdens and order of

presentation of proof in a Title VII case alleging discriminatory treatment:

> First, the plaintiff has the burden of proving by the preponderance of the evidence
> a prima facie case of discrimination. Second, if the plaintiff succeeds in proving
> the prima facie case, the burden shifts to the defendant to articulate some
> legitimate, nondiscriminatory reason for the employee's rejection. Third, should
> the defendant carry this burden, the plaintiff must then have an opportunity to
> prove by a preponderance of the evidence that the legitimate reasons offered by the
> defendant were not its true reasons, but were a pretext for discrimination.

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207

(1981) (citing McDonnell Douglas, 411 U.S. at 802-804)).

## A.      Plaintiff's Prima Facie Case

The Plaintiff in a Title VII case must carry the initial burden under the statute of

establishing a prima facie case of racial discrimination. This burden is not an onerous one.

Burdine, 450 U.S. at 253. A plaintiff can establish a prima facie case of pregnancy discrimination

under Title VII by showing that: "(1) she is a member of a protected class; (2) she satisfactorily

performed the duties required by the position; (3) she was discharged; and (4) her position

remained open and was ultimately filled by a non-pregnant employee." Quaratino v. Tiffany &

Co., 71 F.3d 58, 64 (2d Cir. 1995) (citing McDonnell Douglas, 411 U.S. at 802; Burdine, 450

U.S. at 253)). Defendant does not dispute that Plaintiff can show the first and third elements of

the prima facie case, and accordingly, only the second and fourth elements are at issue here.

### 1.      Whether Plaintiff Was Qualified for the Position

In order to be considered "qualified for the position," as required to meet the second

prong of the prima facie case, Title VII plaintiffs generally must demonstrate only a basic

eligibility for the position.  <u>Slattery</u>, 248 F.3d at 91-92.  The Second Circuit has warned that this

prong should not be interpreted in such a way "as to shift onto the plaintiff the obligation to

anticipate and disprove, in [her] prima facie case, the employer's proffer of a legitimate, non-

discriminatory basis for its decision." <u>Id</u>. at 92.  Although Plaintiff's burden in this regard is

minimal, her qualifications must still be assessed by reference to "the criteria the employer has

specified for the position." <u>Thornley v. Penton Publ'g</u>, 104 F.3d 26, 29 (2d Cir. 1997); <u>see also</u>

<u>O'Neal v. Nicholson</u>, 04 CIV. 7724 (DLC), 2006 U.S. Dist. LEXIS 14265, at *10 (S.D.N.Y. Mar.

31, 2006).[4]  Even when an employee is in a probationary period, the employer must, to defeat the

plaintifff's prima facie case, show that her performance was "so manifestly poor as to render her

unqualified for continued employment." <u>Gregory v. Daly</u>, 243 F.3d 687, 697 n.7 (2d Cir. 2001).

     There is no evidence to suggest that Plaintiff failed to demonstrate basic eligibility for the

position.  Defendant hired Plaintiff for the position, and Plaintiff met the basic requirements in

terms of skills and education. Plaintiff, however, was a probationary employee and therefore must

also show that she met Defendant's honestly-held criteria for job performance.  There is a

genuine issue of material fact as to whether Plaintiff satisfied this standard.  Mr. Flament,

Plaintiff's initial supervisor, indicated in his memo to Ms. Dorman and Ms. Gustafson that

---

[4]   The Second Circuit's varying use of "qualified" and "demonstrating satisfactory job performance" has led to much confusion among the district courts. <u>See, e.g.</u>, <u>Taylor v. Local 32E SEIU</u>, 286 F. Supp. 2d 246, 252 (S.D.N.Y. 2003); <u>Darboe v. Staples, Inc.</u>, 243 F. Supp. 2d 5, 11-12 (S.D.N.Y. 2003); <u>Choate v. Transp. Logistics Corp.</u>, 234 F. Supp. 2d 125, 129 n.3 (D. Conn. 2002). In <u>Thornley</u>, the Second Circuit required a showing of "satisfactory job performance at the time of discharge, in accordance with the particular employer's criteria for satisfactory performance." 104 F.3d at 30. The Second Circuit in <u>Slattery</u>, however, more recently held—without mentioning <u>Thornley</u>—that a plaintiff need only to show "basic eligibility" for the position, rather than making the greater showing that he or she satisfied the employer. 248 F.3d at 91. The <u>Slattery</u> court went on to state that the two phrases may be used interchangeably "so long as, in substance, all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." <u>Id</u>.  As a result, where an employer has already hired an employee and discharge is at issue, the inference of minimal qualifications is not difficult to draw. <u>Id</u>. at 91-92.

Plaintiff performed her duties well, writing, *inter alia*, that she "exhibited many good traits as a worker," was a "quick learner," and was "conscientious about staying focused on her work."

Defendant asserts, however, that Plaintiff was terminated for "excessive absenteeism," and argues that its Customer Service Representative position requires "reliability and accountability," with attendance as "an essential component." (Def.'s Local Rule 56(a)(1) Statement ¶ 5 (<u>citing</u> Gustafson Aff. ¶ 6; Loveland Aff. ¶ 4.).)  Plaintiff argues that although the position does require reliability, attendance is not an "essential component" of the job. (<u>See</u> Pl.'s Local Rule 56(a)(2) Statement ¶ 5.)  Even though Plaintiff was absent on multiple occasions, she followed company procedure each time, had each of her absences approved, and arranged to make up her missed time.  Defendant has failed to show that Plaintiff's performance was "so manifestly poor as to render her unqualified for continued employment."  There is an issue of fact as to whether attendance was an essential component of Plaintiff's position, and whether her performance in that respect rendered her unqualified for the job.  Accordingly, the Court finds that Plaintiff has met her de minimis burden of proving that she was qualified for the position.

2.   <u>Whether Plaintiff's Position Remained Open and Was Ultimately Filled by a Non-Pregnant Employee</u>

Plaintiff has not offered any evidence to suggest that her position remained open and/or was ultimately filled by a non-pregnant employee. Plaintiff contends that she was fired under circumstances giving rise to an inference of discrimination. Defendant asserts that Plaintiff has not shown that the discharge occurred in such circumstances.

If a plaintiff's position did not remain open following her termination or was not filled by a non-pregnant employee, she still may "satisfy the fourth requirement to make out a prima facie case by showing that the discharge occurred in circumstances giving rise to an inference of

11

unlawful discrimination." <u>McDonnell Douglas</u>, 411 U.S. at 802, n.13.  Courts have also interpreted this fourth prong as requiring a showing of disparate treatment—i.e., that a similarly situated, non-pregnant employee was treated differently. See <u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 239 F.3d 456, 467 (2d Cir. 2001). The Second Circuit has held that courts evaluating Title VII cases may find an inference of discriminatory intent in several circumstances including, but not limited to:

> the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

<u>Id.</u> at 468 (<u>citing</u> <u>Chambers v. TRM Copy Ctrs. Corp.</u>, 43 F.3d 29 (2d Cir. 1994)).

Plaintiff has shown that Ms. Gustafson expressed a concern, even prior to Plaintiff's first absence, about her ability to perform her job as a mother with a young child. These concerns were expressed both in Ms. Gustafson's statements to Plaintiff at orientation and in her January 8 memo regarding Plaintiff's scheduling and child care issues. During orientation, Plaintiff was told two to three times that the job may not be a "good match" for her. In the January 8 memo, Ms. Gustafson listed Plaintiff's pregnancy and status as a motherhood as "issues" and wrote that she should "speak to Diane Jones if other issues arise with us letting her go." (Gustafson Mem., January 28, 2004, Ex. 7 to Pl.'s Mem. Opp. Mot. Summ. J.)

Defendant argues that these comments are merely "stray remarks" and, as such, are insufficient to support Plaintiff's claim that her termination was the result of a discriminatory motive. Although Defendant is correct in noting that "the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination," the Second Circuit has held

that when "other indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance." Abdu-Brisson, 239 F.3d at 468 (quoting Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir. 1998)).  Remarks are not considered "stray" and are deemed sufficient to infer a discriminatory motive when they were "(i) made repeatedly, (ii) dr[aw] a direct link between gender stereotypes and the [employment decision] and (iii) were made by supervisors who played a substantial role in the decision to terminate." Back, 365 F.3d at 124, n.12.

The remarks at issue in Back included statements made by a superior to a pregnant employee, with the supervisor saying that the employee should "maybe . . . reconsider whether [she] could be a mother and do this job," and that her superiors  were "concerned that, if [she] received tenure, [she] would work only until 3:15 p.m. and did not know how [she] could possibly do this job with children." Back, 365 F.3d at 115. Her superior also stated that "a mother who received tenure would not show the same level of commitment [she] had shown because [she] had little ones at home." Id. at 120.  The district court categorized these remarks as "stray," however, the Second Circuit reversed the district court's decision, and held that "[t]hese are not the kind of 'innocuous words' that we have previously held to be insufficient, as a matter of law, to provide evidence of discriminatory intent." Id.

The comments made to Plaintiff, while not as explicit as the remarks in Back, could be interpreted to reveal a similar discriminatory or improperly stereotypical sentiment, i.e., that a woman with a young child could not properly perform the duties required for her position.  After learning of her pregnancy, Ms. Gustafson—a supervisor alleged to be involved in the decision to terminate Plaintiff—suggested that the job might not be a match for the Plaintiff.  In context, the remarks cannot be considered "stray;" a jury could conclude that they have an "ominous"

significance and may find a nexus between Ms. Gustafson's comments and the termination

action.  The comments were made by a decision-maker and could be interpreted to imply that

Plaintiff's status as a pregnant woman and a mother would limit her ability to perform her

required duties.  The statements were also made close to the time of Plaintiff's termination.  As

such, a reasonable juror could view the remarks as discriminatory because the remarks

themselves and the context in which they were made could lead reasonably support the

conclusion that they were related to the decision to terminate Plaintiff.  Because Plaintiff's

burden at this stage is minimal, the evidence produced is sufficient to sustain her prima facie

case.

### B.      Defendant's Reasons for Discharging Plaintiff

After a plaintiff has made out a prima facie case of discrimination, the burden then shifts

to the employer to articulate a legitimate, non-discriminatory reason for the employee's

termination. McDonnell Douglas, 411 U.S. at 802 . The employer must "produce evidence that

the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory

reason." Burdine, 450 U.S. at 253.  This burden is one of production, not persuasion; it "can

involve no credibility assessment." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S. Ct.

2742, 125 L. Ed. 2d 407 (1993).  Defendant has met its burden at this stage of the analysis by

offering evidence sufficient for the trier of fact to conclude that Plaintiff was fired because of her

frequent absenteeism. See Reeves, 530 U.S. at 142.

### C.      Pretext for Pregnancy Discrimination

Once the employer has articulated a legitimate, non-discriminatory reason for the

termination, the presumption of discrimination vanishes and the burden shifts back to the

plaintiff to produce evidence demonstrating that the employer's asserted reason is pretextual. See

Hicks, 509 U.S. at 510-511. To avoid summary judgment, Plaintiff proffer sufficient evidence to persuade a rational jury that the employer's stated reason is actually pretext for discrimination. Patterson v. County of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004). Plaintiff may meet this burden by relying on "the evidence constituting the prima facie case, together with supportable inferences to be drawn from the false or erroneous character of the employer's proffered reason for the adverse action." Carlton v. Mystic Transp., Inc. 202 F.3d 129, 135 (2d Cir. 2000). Plaintiff is not required to show that the employer's reasons were false or played no role in the termination, but only that they were not the only reasons and that discrimination factor was at least one of the motivating factors. Back, 365 F.3d at 123. With regard to this element, the Second Circuit has said that "[t]he impermissible bias of a single individual at any stage of the [termination] process may taint the ultimate employment decision." Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999).

Summary judgment is available in discrimination cases only when there are no genuine issues of material fact. See Carlton, 202 F.3d at 135 ("Summary judgment is appropriate at this point only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact."). The Second Circuit has directed district courts to use extra caution when granting summary judgment in discrimination actions since "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." Holtz, 258 F.3d at 69. The prima facie case, together with evidence that the employer's reason for the action is false, could be sufficient to allow the case to go to a jury. See Reeves, 530 U.S. at 147; Kerzer v. Kingly Mfg., 156 F.3d 396, 402 (2d Cir. 1998).

A reasonable jury may find in favor of Plaintiff because she may be able to show that her pregnancy was a motivating factor in the termination decision and may be able to prove that

15

Defendant has a policy of progressive discipline to which it did not adhere. Defendant argues that the progressive discipline policy outlined in the handbook (1) did not constitute a "legally binding agreement" and (2) did not apply to probationary employees.  The Handbook, however, by its terms, applies to "all . . . employees," and does not exclude probationary employees. (See Employee Handbook at 2, Ex. 6 to Pl.'s Mem. Opp. Mot. Summ. J.)  It has been established that "departures from procedural regularity . . . can raise a question as to the good faith of the process where the departure may reasonably affect the decision." Stern v. Trustees of Columbia University, 131 F.3d 305, 313 (2d Cir. 1997) (citations omitted). A reasonable jury could determine that Defendant's action was a departure from procedural regularity and evidence of pretext. This theory is supported by Ms. Gustafson's early comments about "speak[ing] to Diane Jones if other issues arise with us letting her go," which a jury could find to be evidence of Ms. Gustafson's intent to terminate Plaintiff prior to her absences.

Plaintiff produced evidence that creates a material issue of fact as to whether Defendant failed to adhere to its progressive discipline policy prior to her termination and produced evidence that a supervisor made comments that could give rise to an inference of discrimination. Accordingly, the Court concludes, viewing all the evidence submitted by Plaintiff, that Plaintiff has raised a genuine issue of material fact as to whether Defendant's asserted reason for terminating her employment is false and as to whether it is more likely than not that Defendant discharged Plaintiff because she was pregnant.  As such, the Court finds that summary judgment is inappropriate.

**IV.    CONCLUSION**

Defendant's Motion for Summary Judgment [Doc. No. 26] is **denied**.

SO ORDERED.

Dated at New Haven, Connecticut, August  28 , 2006

/s/
Peter C. Dorsey, U.S. District Judge
District of Connecticut